IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THOMAS EDWIN BROWN,                )
                                   )
            Plaintiff,             )
                                   )
     v.                            )     1:17CV1096
                                   )
NANCY A. BERRYHILL,                )
Acting Commissioner of Social      )
Security,                          )
                                   )
                                   )
            Defendant.             )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Thomas Edwin Brown, seeks review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits ("DIB"). The Court has before it the certified administrative record[1] and cross-motions for judgment.

**I.      PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on September 25, 2014 alleging a disability onset date of April 11, 2014, later amended to February 23, 2015. (Tr. 119, 195-201, 375.) The applications were denied initially and again upon reconsideration. (*Id.* at 87-118.) On June 1, 2017, a hearing was held before an Administrative Law Judge ("ALJ") at which Plaintiff, his attorney, and a vocational expert ("VE") were present. (*Id.* at 33-75.) On July 3, 2017, the

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 9.)

ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 17-25.) On October 4, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-6.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "[I]n reviewing for substantial evidence, [the Court] do[es] not re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] Here, the ALJ first determined that

---

[2] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of

2

Plaintiff had not engaged in substantial gainful activity since his amended alleged onset date of February 23, 2015. (Tr. 19.) The ALJ next found that Plaintiff suffered from the following severe impairments: "diabetes mellitus, double vision, chronic pancreatitis, right ankle post-operative degenerative changes, post-traumatic stress disorder (PTSD), adjustment disorder, alcohol abuse disorder[.]" (*Id.* at 19-20.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one listed in Appendix 1. (*Id.* at 20-21.)

Prior to step four, the ALJ determined Plaintiff's residual functional capacity ("RFC"). (*Id.* at 21-24.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform a limited range of light work as defined in 20 CFR 404.1567(b). (*Id.*) Specifically, the ALJ could perform light work,

> except the claimant can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant cannot perform jobs that require fine visual acuity, but retains the ability to read information on devices such as a laptop. The claimant cannot work around hazardous machinery or unprotected heights. The claimant can execute, understand, and remember simple work-like procedures and instructions, and is limited to simple work-related decision making. The claimant can tolerate occasional changes in the work routine and occasional interaction with [the] public and co-workers.

---

a listed impairment; (4) could return to his [or her] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.*

3

(*Id.* at 21.) At the fourth step, the ALJ determined that Plaintiff was capable of performing his past relevant work as a checker. (*Id.* at 24-25.) Consequently, the ALJ determined that Plaintiff was not disabled from the alleged onset date through the decision date. (*Id.* at 25.)

## IV. ISSUES AND ANALYSIS

Plaintiff contends that the ALJ erred by failing to properly account in the RFC for his pancreatitis attacks or "flares". (Docket Entry 13 at 4-9.) Plaintiff notes that due to these attacks, Plaintiff spent at least sixty days in the hospital, spread out over eighteen visits, which averaged over two days per month during the twenty-six month period between Plaintiff's amended alleged onset date (February 23, 2015) and the last medical record on file (April 3, 2017). (*Id.* at 6.) Plaintiff therefore argues that the ALJ erred by not accounting for Plaintiff's absences from work due to pancreatitis flares. (*Id.* at 4-9.) Plaintiff contends this error was compounded by the VE's testimony that at unskilled jobs, no more than one absence per month would typically be allowable. (*Id.* at 5, 8; Tr. 70.) For the following reasons, the Court finds that the ALJ's decision is not susceptible to judicial review.

RFC measures the most a claimant can do despite any physical and mental limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); 20 C.F.R. §§ 404.1520. An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. *See Hines*, 453 F.3d at 562–63; 20 C.F.R. §§ 404.1520. The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy).

4

*See* 20 C.F.R. §§ 404.1520. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. *See* 20 C.F.R. §§ 404.1520.

"The RFC 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)). An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Commissioner of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ's complete discussion Plaintiff's pancreatitis is as follows. First, the ALJ found that Plaintiff's "chronic pancreatitis" constituted a severe impairment at step two. (Tr. 19.)[3] She next noted that Plaintiff had a history of pancreatitis, but that in December, 2014, he told a consultative examiner that he considered himself an alcoholic and continued to drink in spite of multiple episodes of pancreatitis. (*Id.* at 22, 522, 567.) The ALJ continued:

> In April 2015, the claimant went to the emergency room with abdominal pain, nausea, and vomiting (Exhibit 16F P.21). An ultrasound showed a fatty liver (Exhibit 16F P.26). A few months later, the claimant returned to the emergency room with abdominal pain and vomiting (Exhibit 16F P.91). His pain had

---

[3] A "severe" impairment is one that significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). To establish disability, a claimant must establish the existence of a "severe" impairment which is expected to "result in death" or has lasted or is expected to last "for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) and § 404.1520(a), (c).

5

> started after binge drinking the previous evening (Exhibit 16F P.99). A CT scan showed acute pancreatitis and cystic lesion in the pancreatic head (Exhibit 16F P.104). The claimant was admitted for several days for treatment, and went through alcohol withdrawal while hospitalized (Exhibit 16F P.163). The claimant was hospitalized again a few months later, again for acute pancreatitis, and a gastric perforation (Exhibit 16F P.242). Throughout 2016, the claimant was admitted several times for abdominal pain and alcohol pancreatitis after binge drinking (Exhibit 16F P.351-466). Though the claimant had multiple reasons for his drinking, he did acknowledge that he should not have been drinking any more alcohol due to its effect on his impairments (Exhibit 16F P.364).

(*Id.* at 22-23, 700, 705, 770, 778, 783, 842, 921, 1030-1145, 1045.) In formulating the RFC, the ALJ stated,

> The claimant did have recurrent bouts of chronic pancreatitis, mostly due to his alcohol use. The claimant has allegedly stopped using alcohol as of January 2017. Though the claimant's alcohol use is relevant to his pancreatitis, the evidence does not demonstrate that it is relevant to any of his other impairments. Further, the claimant's pancreatitis episodes were not always caused by alcohol; for instance, the claimant testified during the hearing that at least one episode was preceded by eating fried food. Though the claimant had multiple hospitalizations for his pancreatitis, his pain and limitation related to his pancreatitis was not ongoing. Further, it has allegedly improved drastically since the claimant ceased using alcohol. Therefore, while the claimant's pancreatitis was considered in the above residual functional capacity, this impairment is not dispositive of the claimant's case.

(*Id.* at 23-24, 59.)

As the foregoing demonstrates, the ALJ noted that Plaintiff's alcohol use was "relevant" to his pancreatitis. (*Id.* at 23.) However, she did not appear to base her conclusion that Plaintiff's pancreatitis was not "dispositive" (i.e. disabling) on Plaintiff's

6

alcohol use. (*Id.* at 23-24.)[4] Rather, the AJL appears to have found Plaintiff's pancreatitis to be not disabling because it had "allegedly improved drastically" since he quit drinking and his pain and limitation from pancreatitis was "not ongoing". (*Id.* at 24.)

The ALJ's determination is not susceptible to judicial review. In particular, first, the ALJ did not indicate who alleged that Plaintiff's pancreatitis had "drastically improved" (Tr. 24) and it is not immediately obvious from the record. Plaintiff's hospital visits and admissions did not cease between when he stopped using alcohol in February 2017 and the decision date of July 3, 2017, and total the same in number as the same period the previous year. (*Id.* at 1084-1142, 1370-1458.)[5] Without additional explanation, this rationale for

---

[4] Where an ALJ finds that the claimant is disabled, and there is medical evidence of alcoholism, he or she ALJ must then determine whether the alcoholism was a material contributing factor to the disability determination. 20 C.F.R. § 404.1535(a); *see also* 42 U.S.C. § 423(d)(2)(C) (providing that "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled"). The "key factor" in determining whether alcoholism is a material contributing factor is whether the claimant would still be found disabled if he stopped using alcohol. 20 C.F.R. § 404.1535(b)(1). "In making this determination, [the ALJ evaluates] which of [the claimant's] current physical and mental limitations, upon which the ALJ based his current disability determination, would remain if [the claimant] stopped using drugs or alcohol and then determine[s] whether any or all of [the claimant's] remaining limitations would be disabling." Id. § 404.1535(b)(2). If the ALJ determines that the claimant's remaining limitations would not be disabling if he stopped using alcohol, then the ALJ will find that alcoholism is a contributing factor material to the determination of disability. Id. § 404.1535(b)(2)(i). If that determination is made, the claimant is not considered disabled under the Act. 42 U.S.C. § 423(d)(2)(C). Here, the ALJ found Plaintiff not disabled by any or all of his impairments. (Tr. 17-25.)

[5] Plaintiff reported to the emergency department on March 31, 2017, then represented on April 1, 2017 and was admitted. (Tr. 1370-1458.) He was discharged on April 3, 2017. (*Id.* at 1387.) The previous year, Plaintiff was also hospitalized in February. Thereafter, he presented to the emergency department on May 15, 2016 and was admitted. (Tr. 1132-42.) He was discharged on April 18, 2016. (*Id.* at 1085-86.)

7

finding Plaintiff's pancreatitis not dispositive is "difficult to reconcile with the record." *Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017).

Second, although the ALJ characterized Plaintiff's pain and limitation from pancreatitis as "not ongoing" (Tr. 24), by the Court's count, Plaintiff was hospitalized eleven times and for a total of fifty-four days between the alleged amended onset date and the decision dates; he visited the emergency room at least nine other times (*id.* at 590-610, 694-1458). He was in or at the hospital at some point during seventeen of approximately twenty-eight months for approximately sixty-three days, or on average two days each month. (*Id.*) Absent a narrative discussion describing how the evidence supports her conclusion, the Court cannot determine if the ALJ's characterization of Plaintiff's pancreatitis as "not ongoing" is supported by substantial evidence.

Third, a claimant cannot be expected to retain a full-time job if he or she suffers from a condition requiring frequent hospitalizations. *See O'Mahony v. Colvin*, No. 1:13–cv–35, 2015 WL 3505211, at *4 (M.D.N.C. June 3, 2015) (citing *Kangas v. Bowen*, 823 F.2d 775, 778 (3d Cir. 1987), *report and recommendation adopted*, slip op. (M.D.N.C. Jun. 30, 2015). Yet, the ALJ did not discuss Plaintiff's potential absences from work or the VE's testimony regarding employer tolerances. *See id.* ("[N]othing appears in the ALJ's decision to show that she considered Plaintiff's recent history of frequent hospitalizations or rejected the vocational expert's opinion that prospective absenteeism at that rate would preclude competitive employment."); *Moore v. Colvin*, No. 7:14-CV-00167-D, 2015 WL 5062251, at *5 (E.D.N.C. Aug. 10, 2015) (unpublished) ("Inasmuch as ALJ Christ did not discuss whether Moore would likely be absent

from work two or more times per month, based on her past hospital visits, the prudent approach is to remand for further consideration."), *report and recommendation adopted*, 2015 WL 5089105 (E.D.N.C. Aug. 27, 2015) (unpublished). As noted, Plaintiff was at or in the hospital for pancreatitis on about sixty-three days during the just-over-twenty-eight month relevant period, or an average of over two days each month. (Tr. 590-610, 694-1458.) Given Plaintiff's frequent hospitalizations, his potential absences were material to the disability determination. *See Jackson v. Astrue*, No. C.A. 0:08-894TLWPJG, 2009 WL 2513525, at *8 (D.S.C. Aug. 11, 2009) (unpublished) (finding frequency of absences material to a disability determination where the evidence of record shows a claimant would frequently miss work and the VE testified that jobs would allow an employee to miss only ten days per year). The ALJ's failure to make a finding in this regard frustrates judicial review.

The Commissioner's arguments to the contrary are unpersuasive. (Docket Entry 16.) First, the Commissioner counters that Plaintiff's pancreatitis flares were caused by alcohol and food, and therefore could be avoided with abstinence from alcohol and diet control. (*Id.* at 5.) Thus, the Commissioner contends, Plaintiff's pancreatitis was not disabling. (*Id.* (citing 20 C.F.R. § 404.1529(c)(3) (stating that what may precipitate or aggravate symptoms must be considered and is an important indicator of the intensity and persistence of symptoms); *Gross v. Heckler*, 785 F.2d 1163, 1166 ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.").) However, the ALJ did not go so far as to say, as the Commissioner does, that Plaintiff's pancreatitis was not disabling because his flares were entirely avoidable. (*See* Tr. 22-24.) The Court cannot so conclude on review. *See Radford v.*

9

*Colvin*, 734 F.3d 288, 294 (4th Cir. 2013) (rejecting Commissioner's argument in part because it consisted of "a post[-]hoc rationalization") (citing *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012).

Second, the Commissioner contends that the RFC is supported by state agency physician Bonnie Lammers, M.D.'s July 2015 opinion that Plaintiff could perform a limited range of medium work in spite of his impairments including pancreatitis. (Docket Entry 16 at 5-6; Tr. 110-113.) However, the ALJ gave the state agency physicians' opinions only "some weight," concluding that the evidence received at the hearing level showed that Plaintiff did not have the RFC the state agency physicians suggested. (Tr. 24, 94-97, 110-113.) In particular, the ALJ noted evidence of Plaintiff's ankle pain, but the additional evidence also included records of at least nine pancreatitis-related hospitalizations and nine separate trips to the emergency department that postdated Dr. Lammers's opinion. (Tr. 24, 94-97, 110-113, 590-610, 766-1458.) The Commissioner's arguments therefore lack merit.

In sum, the Court cannot determine whether the ALJ's decision as it relates to Plaintiff's pancreatitis and consequent potential absences from work is supported by substantial evidence. None of this necessarily means that Plaintiff is disabled under the Act and the undersigned expresses no opinion on that matter. Nevertheless, the undersigned concludes that the proper course here is to remand this matter for further administrative proceedings. The Court declines consideration of the additional issues raised by Plaintiff at this time. *Hancock v. Barnhart*, 206 F.Supp.2d 757, 763-764 (W.D. Va. 2002) (on remand, the prior decision is of no preclusive effect, as it is vacated and the new hearing is conducted).

10

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that Plaintiff has established an error warranting remand. Accordingly, this Court **RECOMMENDS** that the Commissioner's decision finding no disability be **REVERSED**, and the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for further administrative action as set out above. To this extent, Plaintiff's motion for judgment reversing the commissioner (Docket Entry 12) should be **GRANTED** and Defendant's motion for judgment on the pleadings (Docket Entry 15) be **DENIED**.

Joe L. Webster
United States Magistrate Judge

August 15th, 2018
Durham, North Carolina